IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRANDON J. WEATHERS, | |
| Petitioner, | 8:19CV296 |
| vs. | |
| SCOTT FRAKES, | MEMORANDUM AND ORDER |
| Respondent. | |

Petitioner brings this § 2254 case challenging his conviction for two counts of first-degree sexual assault of a child. Filing no. 9, the amended petition, is the operative pleading. The Respondent has answered and filed the relevant state court records. The matter has been briefed. I now deny the amended petition and dismiss this matter with prejudice for the reasons stated below.

## *Brief Overview*

There is absolutely no doubt that Petitioner had intimate relations with a 13-year-old girl for whom he was supposed to be serving as a foster father. The child miscarried at the hospital and DNA established the paternity of Petitioner. To say the least, his defense at the jury trial was bizarre.

After dissatisfaction with his two public defenders[1], and despite repeated warnings by the trial judge, *e.g.*, Filing no. 11-16 at CM/ECF p. 50, Petitioner decided to represent himself. He testified and claimed that he had masturbated into a plastic bag at least four times and the child on multiple occasions inserted his semen into her vaginal cavity using several syringes. In other words, he claimed that he did not penetrate the child with his penis. Filing 11-20 at CM/ECF pp. 111–172.

---

[1] They served as standby counsel.

However, his pastor, who Petitioner called as his witness, testified that Petitioner had admitted to the pastor that at least once Petitioner penetrated the child with a syringe. *Id.* at CM/ECF p. 106–107.[2] The pastor also recounted that he told Petitioner he did not believe the syringe story either. *Id.* at CM/ECF p. 111.

There was a great deal more evidence, including the haunting testimony of the child, *e.g.*, Filing no. 11-18 at CM/ECF pp. 151-250 (direct examination), but it is enough to state that the evidence was overwhelming, the jury did not believe Petitioner and he was convicted on both counts. The sentencing range for each count was a minimum of 15 years to a maximum of life. He was sentenced to consecutive sentences of 50 to 80 years of imprisonment.

In fashioning Petitioner's sentences, the trial judge recognized that Petitioner failed to take responsibility for his actions. The court relied on the nature of the offenses and Petitioner's actions after the investigation began. The child was Petitioner's l3-year-old foster daughter, and the sexual assaults began during the 7-week period she resided in his home. After she was moved from Petitioner's home, he continued to sneak cell phones to her, followed her around, and maintained a sexual relationship with her, impregnating her more than 4 months after she was removed from his care. The trial judge observed that Petitioner was the only father figure the child ever had, which made his violation of her trust that much worse. And the child's caseworkers were extremely fearful for her safety and exhausted themselves trying to keep the child away from Petitioner.

### *Procedural History*

Petitioner, with newly appointed counsel, filed a direct appeal. The Nebraska Court of Appeals affirmed Petitioner's convictions and sentences in an opinion filed on January 3, 2017. *State v. Weathers*, No. A-16-305, 2017 WL 24777 (Neb. App. 2017) (*Weathers I*). A copy of the opinion may be found at Filing no. 11-3. A petition

---

[2] On cross-examination by the prosecution, Petitioner then claimed that his pastor was not telling the truth. *Id.* at CM/ECF p. 158. ("He flat out lied.")

for further review to the Nebraska Supreme Court was filed on February 6, 2017 and denied as untimely filed. Filing no. 11-1 at CM/ECF p. 4.

On November 2, 2017, Petitioner filed a timely motion for postconviction relief in the district court. An amended motion was later filed. The state district court denied the amended postconviction motion without an evidentiary hearing. Petitioner appealed, and on March 26, 2019, the Nebraska Court of Appeals affirmed the lower court's judgment. *State v. Weathers*, No. A-18-483, 2019 WL 1375345 (Neb. App. 2019) (*Weathers II*). A copy of that opinion may be found at Filing no. 11-4. The mandate was issued on May 1, 2019. After the issuance of the mandate, and on May 6, 2019, Filing no. 11-2 at CM/ECF p. 2, Petitioner filed an untimely petition for further review which was denied by the Nebraska Supreme Court. *Id.*

Petitioner endeavors to excuse the late filing of the two petitions for further review.[3] Filing no. 17; Filing no. 18. I will discuss his arguments in slightly more detail later in this opinion. I assume, without deciding, that the exhibits (Exhibits 12-14) attached to Filing no. 17 are true and correct copies of "kites" he submitted to prison officials regarding mailings even though they are not properly authenticated by affidavit.

### *Claims*

Here are the claims that I found potentially cognizable:

> Claim One: Appellate counsel was ineffective for failing to assign as error the trial court's failure to conduct an adequate inquiry into Petitioner's motion to substitute counsel.

---

[3] The petition for further review regarding the direct appeal has no particular relevance at least insofar as the ineffective assistance of counsel claims are concerned because they all related to counsel who represented Petitioner in the direct appeal. So, it is the second petition for further review regarding the post-conviction matter that is the most significant.

3

Claim Two: Appellate counsel was ineffective for failing to assign as error that the Petitioner's waiver of counsel was not knowingly, voluntarily and intelligently made.

Claim Three: Appellate counsel was ineffective for failing to assign as error that Petitioner was denied his right to effective assistance of trial counsel due to ineffective cross-examination.

Claim Four: Appellate counsel was ineffective for failing to assign as error that the prosecution withheld exculpatory evidence in violation of *Brady v. Maryland*.

Claim Five: Appellate counsel was ineffective for failing to assign as error that trial counsel was ineffective for failing to suppress the DNA evidence.

Claim Six: Petitioner is actually innocent.

Filing no. 14 at CM/ECF pp. 1–2.

## *Analysis*

Respondent asserts that claims 1-5 are procedurally defaulted without excuse. Respondent also asserts that claim 6 is not cognizable, that is, it fails to state a federal claim, but even it if did the claim is meritless. I agree. Given the nature of this case, and the fact that the law is well understood, I will be brief.

### *Claims 1-5*

The first five claims at stake here were not presented to the Nebraska Supreme Court and thus the Nebraska courts were not provided with one complete round of

review. Since Nebraska does not allow two bites of the post-conviction apple,[4] Nebraska's highest court is, and will forever be, foreclosed from reviewing Petitioner's claims. Generally speaking, this violates the doctrine of comity that undergirds the present federal habeas corpus law. *See*, *e.g.*, 28 U.S.C. § 2254(b)(1)(A).

Under federal law, a state prisoner must present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, this ordinarily means that each § 2254 claim must have been presented to the trial court, then in an appeal to the Nebraska Court of Appeals, and finally in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–848 (1999) (in order to satisfy exhaustion requirement, prisoner was required to present his claims to Illinois Supreme Court for discretionary review); *Akins v. Kenney*, 410 F.3d 451, 454–455 (8th Cir. 2005) (Nebraska law required petitioner to file a petition for further review with the Nebraska Supreme Court in order to exhaust his available state court remedies).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or

---

[4] That is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.")

5

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

I assume, without deciding, the doubtful proposition that Petitioner has demonstrated "cause" to excuse the procedural default of claim one as relates to the petition for further review of the post-conviction decision of the Nebraska Court of Appeals. This is because there may have been a mail screwup at the prison as possibly evidenced by Filing no. 17 CM/ECF p. 5.[5] But Petitioner cannot establish "actual prejudice." To establish "actual prejudice" under *Coleman*, a petitioner must show that the errors of which he complains "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

In claim one, Petitioner asserts that his appellate counsel was ineffective for failing to assign as error the trial court's alleged failure to conduct an adequate inquiry into his pro se motion to substitute counsel (fire the two court appointed public defenders so he could get a new court appointed lawyer). However, in *Weathers II* the Nebraska Court of Appeals carefully examined the claim and found it entirely lacking in merit for among other reasons that under Nebraska law (and federal law too) indigent defendants are not entitled to a new court appointed lawyer for no good reason. 2019 WL 1375345, at *1–4.[6] There is no chance that the

---

[5] But the following should be noted: "Nebraska does not have a prison delivery rule." *State v. Seberger*, 815 N.W.2d 910, 915 & n.5 (Neb. 2012) (citing *State v. Hess*, 622 N.W.2d 891 (Neb. 2001); *State v. Parmar*, 586 N.W.2d 279, 284 (Neb. 1998) ("We decline to adopt the 'prisoner delivery rule' and conclude that prisoners acting pro se are subject to the same filing rules as other litigants.")

[6] Among other things, Petitioner was upset with his public defenders because he thought that they were not doing enough to get exculpatory text or e-mails from the variety of phones he had provided the child. So far as the record reflects, Petitioner never identified what *specific* exculpatory text or e-mail messages were missing. In any event, the public defenders were in contact with the prosecutor and the prosecutor stated on the record that she had turned over and would turn over

Nebraska Supreme Court would have disagreed with the careful analysis of the Nebraska Court of Appeals. Indeed, I have independently reviewed the merits of the claim, and giving the deference due the Nebraska Court of Appeals, the decision was bullet proof under applicable federal standards.[7] Hence, Petitioner has shown no actual prejudice.

Petitioner's second through fifth habeas claims involve additional assertions of ineffective assistance of direct appeal counsel that have been defaulted even without considering the tardy petition for further review. Petitioner concedes that these claims have been procedurally defaulted because he either failed to reassert the claims in his post-conviction appeal or he never raised them in his post-conviction motion. Filing No. 18 at CM/ECF pp. 14–15; Filing No. 20 at CM/ECF pp. 10-11. Petitioner seeks to excuse his procedural default because the claims involve ineffective assistance of appellate counsel. *Id.* But, Petitioner's claims of ineffective assistance of appellate counsel on direct appeal cannot serve as cause to excuse the procedural default because he did not present these ineffective assistance of appellate counsel claims in the post-conviction proceedings before the trial court or,

---

whatever she was provided by the technicians. The record reflects page after page after page of extraction reports from one or more of the cell phones. See portions of Filing no. 11-22; Filing no. 11-23; Filing no. 11-24.

[7] Petitioner argues that the appellate court's decision was unreasonable because the court failed to consider the hearings held on November 13 and December 3, 2015. Filing No. 18 at CM/ECF pp. 12–13. However, these hearings, Filing no. 11-16 at CM/ECF pp. 63–101, occurred *after* the trial court ruled on Petitioner's motion to dismiss counsel on November 4, 2015, and thus, were not relevant to the court's analysis. *Id.* at CM/ECF pp. 49–54. Moreover, Petitioner never renewed his motion to dismiss his court appointed counsel but instead continued to insist that he would represent himself at trial. *Id.* at CM/ECF pp. 63–101.

alternatively, the Nebraska Court of Appeals.[8] He had the opportunity to do so, and blew it.

Nebraska law is clear on this subject. A person seeking post-conviction relief must present his or her claim to the district court or the Nebraska appellate courts will not consider the claim on appeal. *State v. Deckard*, 722 N.W.2d 55, 63 (Neb. 2006) (denying postconviction relief in a murder case and stating: "An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.") Similarly, on appeal, the appealing party must both assign the specific error and specifically argue that error in the brief. Otherwise the claim is defaulted under Nebraska law. *State v. Henry*, 875 N.W.2d 374, 407 (Neb. 2016) (stating an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court). These rules are consistently applied in Nebraska

So, even if I disregard the untimely petition for further review, Petitioner has procedurally defaulted claims two through five. And, he has shown no cause for the default (some factor external to him). Moreover, he has shown no actual prejudice for the default either.

*Claim 6*

Claim six, regarding an allegation of actual innocence, while probably procedurally defaulted as well, can be easily denied on the merits for two reasons. First, the Supreme Court has never recognized a freestanding claim of actual innocence. *See Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014). Second, even

---

[8] *Martinez v. Ryan*, 566 U.S. 1 (2012) is not applicable to this case because the claims here involve only ineffective assistance of direct appeal counsel. *See Davila v. Davis*, 137 S. Ct. 2058, 2063 (2017) (*Martinez* does not apply to defaulted ineffective assistance of appellate counsel claims).

if there was such an animal, the burden on Petitioner would be extraordinarily high. *Id.* And Petitioner has not come anywhere close to meeting such a burden.[9] Indeed, his assertion of actual—meaning factual—innocence is frivolous.[10]

### *Certificate of Appealability*

A petitioner cannot appeal an adverse ruling on his or her petition for writ of habeas corpus under § 2254 unless he or she is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484–485 (2000). I have applied the appropriate standard and determined Petitioner is not entitled to a certificate of appealability.

IT IS ORDERED that this matter is dismissed with prejudice. No certificate of appealability will be or has been issued. A separate judgment will be filed.

Dated this 13th day of February, 2020.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge

---

[9] Petitioner concedes that he has no new evidence to support his actual innocence claim. Filing no. 18 at CM/ECF pp. 15–16; Filing no. 20 at CM/ECF pp. 11–12.

[10] This necessarily means that I have concluded that there has been no miscarriage of justice that would excuse any of the procedural defaults described above.